# Syllabus

Chief Justice:
Robert P. Young, Jr.

Justices:
Michael F. Cavanagh
Stephen J. Markman
Mary Beth Kelly
Brian K. Zahra
Bridget M. McCormack
David F. Viviano

**This syllabus constitutes no part of the opinion of the Court but has been prepared by the Reporter of Decisions for the convenience of the reader.**

WHITMAN v CITY OF BURTON

Docket No. 143475. Argued November 15, 2012 (Calendar No. 5). Decided May 1, 2013.

Bruce Whitman brought an action in the Genesee Circuit Court against the city of Burton and the mayor of the city, Charles Smiley, alleging that defendants had violated the Whistleblowers' Protection Act (WPA), MCL 15.361 *et seq*., when the mayor declined to reappoint plaintiff as police chief for the city in November 2007. Plaintiff alleged that he was not reappointed because, in early 2004, he had threatened to pursue criminal charges against the mayor if the city did not comply with a city ordinance and pay plaintiff for the unused sick, personal, and vacation leave time he had accumulated in 2003. Defendants maintained that plaintiff, along with other city administrators, had agreed to forgo any payout for accumulated leave in order to avoid a severe budgetary shortfall and that plaintiff was not reappointed because the mayor was dissatisfied with many aspects of plaintiff's performance as chief of police. A jury returned a verdict in favor of plaintiff. The court, Geoffrey L. Neithercut, J., entered a judgment consistent with the verdict and thereafter denied defendants' motion for judgment notwithstanding the verdict (JNOV) or a new trial. Defendants appealed. The Court of Appeals, O'CONNELL, P.J., and SAAD, J. (BECKERING, J., dissenting), reversed the circuit court's denial of defendants' motion for JNOV and remanded the case for further proceedings, concluding that plaintiff's claim was not actionable under the WPA because, in threatening to pursue criminal charges, plaintiff had acted to advance his own financial interests and not out of an altruistic motive of protecting the public. 293 Mich App 220 (2011). The Supreme Court granted leave to appeal. 491 Mich 913 (2012).

In an opinion by Justice MARY BETH KELLY, joined by Chief Justice YOUNG and Justices CAVANAGH, MARKMAN, and ZAHRA, the Supreme Court *held*:

The WPA protects an employee against an employer's retaliatory employment actions when the employee is engaged in protected activity. To establish a prima facie case under the WPA, a plaintiff must show that (1) he or she was engaged in protected activity as defined by the act, (2) he or she suffered an adverse employment action, and (3) a causal connection exists between the protected activity and the adverse employment action. The statutory language does not address an employee's primary motivation, nor does it imply or suggest that any motivation must be proved as a prerequisite to bringing a claim. Therefore, there is no statutory basis for imposing a primary-motivation requirement, and judicial imposition of that requirement would violate the fundamental rule of statutory construction, which precludes judicial construction and interpretation when the statutory language is clear and unambiguous. In *Shallal v Catholic*

*Social Servs of Wayne Co*, 455 Mich 604 (1997), the Supreme Court considered an employee's primary motivation for pursuing a claim under the WPA and concluded that because the employee had not threatened to report her employer out of an altruistic motive of protecting the public, there was no causal connection between the employee's discharge and her protected activity. *Shallal*, however, did not hold that an employee's motivation is a factor in determining whether the employee engaged in protected activity. To the extent that *Shallal* has been interpreted as requiring a specific motive, any language to that effect is disavowed as dicta. In this case, plaintiff engaged in conduct protected under the WPA when he reported the mayor's violation of the local ordinance to the mayor himself, to a city administrator, and to the city attorney. To recover under the WPA, plaintiff therefore had to establish a causal connection between this protected conduct and the adverse employment decision by demonstrating that defendants took the adverse employment action because of plaintiff's protected activity. However, because the Court of Appeals did not address the issue of causation when it held that plaintiff's WPA claim failed as a matter of law, this question had to be resolved on remand for the purpose of determining whether the circuit court's denial of defendants' motion for JNOV was proper.

Reversed and remanded to the Court of Appeals for consideration of the remaining issues on appeal.

Justices MCCORMACK and VIVIANO took no part in the decision of this case.

©2013 State of Michigan

# Opinion

Chief Justice:          Justices:

Robert P. Young, Jr.    Michael F. Cavanagh
                        Stephen J. Markman
                        Mary Beth Kelly
                        Brian K. Zahra
                        Bridget M. McCormack
                        David F. Viviano

FILED MAY 1, 2013

STATE OF MICHIGAN

SUPREME COURT

BRUCE WHITMAN,

        Plaintiff-Appellant/Cross-
        Appellee,

v                            No. 143475

CITY OF BURTON and CHARLES
SMILEY,

        Defendants-Appellees/Cross-
        Appellants.

---

BEFORE THE ENTIRE BENCH (except MCCORMACK and VIVIANO, JJ.)

MARY BETH KELLY, J.

      This case involves the proper interpretation of the Whistleblowers' Protection Act

(WPA),[1] which protects an employee against an employer's retaliatory employment

actions, including discharge, when the employee is engaged in protected activity.

Specifically, we address whether this Court's decision in *Shallal v Catholic Social*

---

[1] MCL 15.361 *et seq*.

*Services of Wayne County*[2] requires an employee engaging in protected conduct to have, as his or her primary motivation for engaging in that conduct, a desire to inform the public on matters of public concern, rather than personal vindictiveness.

Nothing in the statutory language of the WPA addresses the employee's motivation for engaging in protected conduct, nor does any language in the act mandate that the employee's *primary* motivation be a desire to inform the public of matters of public concern. Rather, the plain language of MCL 15.362 controls, and we clarify that a plaintiff's motivation is not relevant to the issue whether a plaintiff has engaged in protected activity and that proof of primary motivation is not a prerequisite to bringing a claim. To the extent that *Shallal* has been interpreted to mandate those requirements, it is disavowed. Accordingly, we reverse the judgment of the Court of Appeals and remand this matter to that Court for consideration of all remaining issues, including whether the causation element of MCL 15.362 has been met.

## I. FACTS AND PROCEDURAL HISTORY

Plaintiff, Bruce Whitman, was employed by defendant city of Burton as the chief of police from the time of his appointment in March 2002 until November 2007 when codefendant Charles Smiley, the mayor of Burton (the Mayor), declined to reappoint him. Whitman thereafter brought this action under the WPA, claiming that the Mayor's decision not to reappoint him was prompted by Whitman's repeated complaints to the Mayor and the city attorney that the refusal to pay Whitman's previously accumulated unused sick and personal leave time would violate a Burton ordinance.

---

[2] *Shallal v Catholic Social Servs of Wayne Co*, 455 Mich 604; 566 NW2d 571 (1997).

2

Burton Ordinances 68-25C, § 8(I) (Ordinance 68C)[3] allows for unelected administrative officers, including Whitman, to be compensated for unused sick, personal, and vacation time on an annual basis.[4] Because of significant budgetary problems in March 2003, the Mayor and the city department heads made a "gentleman's agreement" to forgo payments of unused sick, personal, and vacation time as a budget-cutting measure, which was acknowledged in a memorandum dated March 18, 2003. Although the agreement was memorialized, the city officials did not amend or rescind the ordinance allowing compensation for the unused days. On March 20, 2003, Whitman sent a letter to the Mayor objecting to the austerity measures outlined in the March 18th memorandum.

Despite receiving notice that he would not receive compensation for the unused leave time, Whitman continued to accumulate unused vacation, personal, and sick days throughout 2003. In January 2004, Whitman undertook a series of actions to secure payment for his 2003 unused days, repeatedly asserting that the city was acting in violation of Ordinance 68C. Specifically, on January 9, 2004, Whitman sent a letter to

---

[3] It appears that Burton's ordinance numbering and policy regarding unused leave time have changed since the time of the trial of this case. Because those changes are not relevant to our analysis, this opinion refers to the ordinance numbering and language as it was introduced during trial.

[4] Ordinance 68C provided, in pertinent part:

> Administrative Officers may accumulate unused sick/personal days until a 90 day accumulation has been created. Vacation days and unused holidays may also be credited for purpose of the accumulation. At the option of any administrative officer, any unused sick and/or personal, and/or vacation days may be paid in January in the year after which they are accumulated.

the Mayor requesting payout for his 2003 unused days. In pertinent part, Whitman's letter stated, "To ignore issues specified in that ordinance would be a direct overt violation of that ordinance and I fully intend to address the violation should it occur."

On January 12, 2004, Whitman attended a staff meeting and advised that he had spoken to the city attorney about the issue, and that refusing to pay employees for unused days was an ordinance violation that needed to be addressed. On January 15, 2004, Whitman wrote a letter to Dennis Lowthian, an administrative officer for the city who had been acting as a spokesperson for all of the administrators. In this letter, Whitman reiterated his concerns, stating, "I cannot allow them to violate the ordinance by 'forcing waivers' of ordinance given rights. I believe it is my job as a police officer to point the violation out and I will pursue it as far as it needs to go."

On January 23, 2004, Whitman once again wrote the city attorney, reasserting that the failure of the city to pay him for unused days was a violation of the ordinance. Whitman stated, "[T]his is a violation of the ordinance . . . . If I need to re address [sic] through the council I will, if you have any input on resolving this I would appreciate it or I will be forced to pursue this as a violation of the law and will address it as such." On January 29, 2004, the city relented and, on the advice of the city attorney that failure to pay Whitman would be in violation of Ordinance 68C, authorized payments for all unused days to Whitman and all other officers who had requested it.

It was this series of actions that Whitman claims served as the catalyst for the Mayor's decision not to reappoint him in 2007. According to Whitman, the Mayor's conduct after the city's authorization of payment for his unused vacation and sick days further substantiates the validity of his WPA claim. Whitman alleges that in a letter dated

4

June 7, 2004, the Mayor stated that he was considering removing Whitman as police chief, specifically citing Whitman's actions in pursuing compensation for his unused vacation and sick days as a basis for the Mayor's claim that he could not trust Whitman. During a meeting that took place later that same day, Whitman claims that the Mayor was very angry at him and yelled, "[Y]ou tried to put me in jail" over the Ordinance 68C issue. Whitman also claims that the Mayor angrily pointed his finger at him, stating, "I demand total allegiance to me from my administrators[.]" A coworker who was present during that meeting took handwritten notes that stated, "<u>Mayor</u> = No Trust — 68-C (vacation) — lack of communication[.]"

Following his reelection in 2007, the Mayor declined to reappoint Whitman. Shortly thereafter, the Mayor attended a meeting with members of the police department. Several officers in attendance at this meeting reported that the Mayor stated that he and Whitman "got off on the wrong foot" because of the Ordinance 68C issue and that Whitman's conduct relating to the ordinance got them off to a "bad start." There were also allegations by officers who stated that after the meeting, the Mayor had indicated that "it all goes back to" the Ordinance 68C issue, and that the Mayor had not been happy with Whitman since shortly after his appointment because of the Ordinance 68C issue.

Defendants deny that the Mayor's decision to appoint another police chief in 2007 was in any way related to Whitman's complaints about the Ordinance 68C violation, asserting that the decision was the result of the Mayor's dissatisfaction with Whitman's performance. Specifically, defendants claim there were numerous reasons for Smiley's decision not to reappoint Whitman, including Whitman's alleged inadequate discipline of officers who inappropriately stopped the Mayor after the Mayor visited a local bar,

Whitman's alleged e-mailing of inappropriate messages using the city's computer, Whitman's alleged discrimination against a female officer, and Whitman's alleged forgery of a signature on a budget memo. Whitman, however, asserts that his personnel file demonstrates that his performance as a police chief was good, that he had received numerous awards, and that there were never any disciplinary actions against him. Whitman further alleges that any performance issues cited by the Mayor were merely a pretext.[5]

Whitman thereafter brought this WPA action against both the city of Burton and the Mayor in his individual capacity. At trial, the jury found that Whitman had engaged in protected conduct and that his protected conduct made a difference in the Mayor's decision not to reappoint him as police chief. The jury awarded Whitman total damages in the amount of $232,500.00, and the circuit court subsequently entered a judgment in that amount. Defendants then moved for judgment notwithstanding the verdict (JNOV) or for a new trial, which the circuit court denied.

The Court of Appeals reversed in a split published opinion,[6] with the majority holding, as a matter of law, that Whitman's claim was not actionable under the WPA because, "in threatening to inform the city council or prosecute the mayor for a violation of Ordinance 68-C, plaintiff clearly intended to advance his own financial interests. He did not pursue the matter to inform the public on a matter of public concern."[7] On the

---

[5] See *Debano-Griffin v Lake Co*, 493 Mich 167, 176; ___ NW2d ___ (2013).

[6] *Whitman v City of Burton*, 293 Mich App 220; 810 NW2d 71 (2011).

[7] *Id*. at 228-229.

basis of its belief that a "*critical inquiry*" in determining the validity of a claim under the WPA "is whether the employee acted in good faith and with 'a desire to inform the public on matters of public concern . . . ,'"[8] the Court of Appeals concluded that Whitman had "acted entirely on his own behalf" such that "[u]nder these facts, no reasonable juror could conclude that plaintiff threatened to prosecute defendants 'out of an altruistic motive of protecting the public.'"[9]

Accordingly, the Court of Appeals reversed the circuit court's denial of defendants' motion for JNOV and remanded the case for further proceedings. The majority did not decide any of the remaining issues, including causation. This Court granted leave to appeal.[10]

## II. STANDARD OF REVIEW

This case involves the interpretation and application of a statute, which is a question of law that this Court reviews de novo.[11] When interpreting a statute, we follow the established rules of statutory construction, the foremost of which is to discern and

---

[8] *Id*. at 230, quoting *Shallal*, 455 Mich at 621 (emphasis added; citation and quotation marks omitted).

[9] *Whitman*, 293 Mich App at 231, quoting *Shallal*, 455 Mich at 622.

[10] We ordered the parties to brief "whether *Shallal v Catholic Social Servs of Wayne Co*, 455 Mich 604 (1997), correctly held that the primary motivation of an employee pursuing a whistleblower claim must be a desire to inform the public on matters of public concern, as opposed to personal vindictiveness." *Whitman v City of Burton*, 491 Mich 913 (2012).

[11] *People v Lee*, 489 Mich 289, 295; 803 NW2d 165 (2011); *Miller-Davis Co v Ahrens Constr, Inc*, 489 Mich 355, 361; 802 NW2d 33 (2011).

7

give effect to the intent of the Legislature.[12]  To do so, we begin by examining the most reliable evidence of that intent, the language of the statute itself.[13]  If the language of a statute is clear and unambiguous, the statute must be enforced as written and no further judicial construction is permitted.[14]  Effect should be given to every phrase, clause, and word in the statute and, whenever possible, no word should be treated as surplusage or rendered nugatory.[15]  Only when an ambiguity exists in the language of the statute is it proper for a court to go beyond the statutory text to ascertain legislative intent.[16]

## III.  ANALYSIS

## A.  THE WPA

The WPA was first enacted by the Michigan Legislature in 1980 to "provide protection to employees who report a violation or suspected violation of state, local, or federal law . . . ."[17]  The WPA furthers this objective by removing barriers that may interfere with employee efforts to report those violations or suspected violations,[18] thus

---

[12] *Sun Valley Foods Co v Ward*, 460 Mich 230, 236; 596 NW2d 119 (1999).

[13] *Id.*

[14] *Id.*

[15] *Baker v Gen Motors Corp*, 409 Mich 639, 665; 297 NW2d 387 (1980).

[16] *Sun Valley*, 460 Mich at 236.

[17] Preamble, 1980 PA 469.

[18] *Dolan v Continental Airlines/Continental Express*, 454 Mich 373, 378-379; 563 NW2d 23 (1997).

establishing a cause of action for an employee who has suffered an adverse employment action for reporting or being about to report a violation or suspected violation of the law.

The relevant portion of the WPA, MCL 15.362, provides as follows:

> An employer shall not discharge, threaten, or otherwise discriminate against an employee regarding the employee's compensation, terms, conditions, location, or privileges of employment because the employee, or a person acting on behalf of the employee, reports or is about to report, verbally or in writing, a violation or a suspected violation of a law or regulation or rule promulgated pursuant to law of this state, a political subdivision of this state, or the United States to a public body, unless the employee knows that the report is false, or because an employee is requested by a public body to participate in an investigation, hearing, or inquiry held by that public body, or a court action.

To establish a prima facie case under the WPA, a plaintiff need only show that (1) he or she was engaged in protected activity as defined by the act, (2) he or she suffered an adverse employment action, and (3) a causal connection exists between the protected activity and the adverse employment action.[19] Additionally, MCL 15.362 makes plain that protected conduct does not include reports made by an employee that the employee knows are false, or reports given because the employee is requested to participate in an investigation by a public body.

Defendants argue that in order to assert an actionable claim under the WPA, an employee's primary motivation for engaging in protected conduct must be "a desire to inform the public on matters of public concern." However, MCL 15.362 does not address an employee's "primary motivation," nor does the statute's plain language

---

[19] *Chandler v Dowell Schlumberger Inc*, 456 Mich 395, 399; 572 NW2d 210 (1998); *Shallal*, 455 Mich at 610.

9

suggest or imply that *any* motivation must be proved as a prerequisite for bringing a claim. Further, the WPA does not suggest or imply, let alone mandate, that an employee's protected conduct must be motivated by "a desire to inform the public on matters of public concern" as a prerequisite for bringing a claim. Therefore, we hold that, with regard to the question whether an employee has engaged in conduct protected by the act, there is no "primary motivation" or "desire to inform the public" requirement contained within the WPA. Because there is no statutory basis for imposing a motivation requirement, we will not judicially impose one. To do so would violate the fundamental rule of statutory construction that precludes judicial construction or interpretation where, as here, the statute is clear and unambiguous.[20]

## B. *SHALLAL*

In *Shallal*, this Court reviewed the requirements of the WPA in a case in which the plaintiff, Janette Shallal, attempted to use the WPA as an extortionate tool in order to frustrate her employer's decision to terminate her for poor performance and misconduct. Shallal was employed as an adoption department supervisor for Christian Social Services (CSS), a nonprofit social service agency that provided adoption services. During her employment, Thomas Quinn was appointed as president of the agency. Approximately one year after Quinn's appointment, Shallal learned of allegations that Quinn had been drinking on the job and misusing the agency's funds. While Shallal discussed these

---

[20] *Sun Valley*, 460 Mich at 236.

allegations with various coworkers, at no time did she report Quinn's violations to the board of directors or to any other responsible body.

Shallal's termination was precipitated by her inadequate response to a report of child abuse pertaining to an adoption that she had previously supervised, which ultimately resulted in catastrophic injuries to the child. Upon learning of the child's injuries, Shallal notified the Department of Social Services (DSS), which faulted both Shallal's poor performance and CSS's institutional practices. DSS did not, however, recommend Shallal's dismissal. Indeed, according to Shallal, similar errors did not result in the discharge of other employees. DSS officials then met with Quinn to discuss their findings, and Quinn subsequently addressed the matter with Shallal. Their discussion became heated, with "Shallal stat[ing] her intention to report Quinn's abuses of alcohol and agency funds if he failed to, in her words, 'straighten up.'"[21] Ultimately, Quinn made the decision to discharge Shallal, citing the DSS's findings as cause for her termination and accusing her of gross misconduct and negligence in supervising the adoption of the child.

Shallal thereafter brought suit claiming that these facts gave rise to a WPA claim, but the circuit court granted summary disposition in favor of CSS because Shallal had failed to show that she was "about to report" a violation.[22] The Court of Appeals affirmed on this basis, holding that there was no immediacy to Shallal's threatened reporting of Quinn given that those threats were conditioned on Quinn's continued

---

[21] *Shallal*, 455 Mich at 607-608.

[22] MCL 15.362.

misconduct.[23]  This Court disagreed, concluding that Shallal had presented sufficient evidence to create a question of fact with regard to whether she was about to report a violation and, thus, whether she had engaged in protected activity.  Because this Court concluded that Shallal's "express threat to the wrongdoer that she would report him if he did not straighten up, especially coupled with her other actions, was more than ample to conclude that reasonable minds could find that she was 'about to report' a suspected violation of the law to the DSS,"[24] it reversed that aspect of the lower courts' decisions.

However, despite ruling that Shallal had engaged in protected activity, this Court affirmed the grant of summary disposition to CSS on the alternative basis of causation.  That is, this Court determined that Shallal was unable to set forth a prima facie case under the WPA because she "failed to establish a causal connection between her actions and her firing."[25]  To support this holding, this Court observed that many courts have held that an employee's bad faith will preclude recovery under a whistleblower statute.  It then cited, among others, federal case *Wolcott v Champion International Corp*[26] for the proposition that "[t]he primary motivation of an employee pursuing a whistleblower claim 'must be a desire to inform the public on matters of public concern, and not personal vindictiveness.'"[27]  This Court then explained:

---

[23] *Shallal*, 455 Mich at 608-609.

[24] *Id*. at 621.

[25] *Id*.

[26] *Wolcott v Champion Int'l Corp*, 691 F Supp 1052 (WD Mich, 1987).

[27] *Shallal*, 455 Mich at 621, quoting *Wolcott*, 691 F Supp at 1065.

Where, however, an employee . . . keeps the matter quiet for more than a year, eventually revealing it not to the appropriate authorities or even to others for the purpose of preventing public injury, but rather for some other limited and private purpose, however laudable that purpose may appear to the employee, no such protection is afforded. [Otherwise] we would be discouraging disclosure and correction of unlawful or improper acts by encouraging employees to "go along" and then keep quiet reserving comment or disclosure until a time best suited to the advancement of their own interests.[28]

Determining that Shallal had "used her own situation to extort [CSS] not to fire her," this Court held that there was no causal connection between Shallal's firing and the protected activity when "no reasonable juror could conclude that [Shallal] threatened to report Quinn out of an altruistic motive of protecting the public."[29] Because Quinn's decision to fire Shallal preceded Shallal's threat to report him, and Shallal was aware that she was going to be fired before threatening to report Quinn, this Court concluded that Shallal "[could not] use the whistleblowers' act as a shield against being fired . . . ."[30]

## C. THE COURT OF APPEALS' APPLICATION OF *SHALLAL*

In this case, despite the marked absence of any motivational element in the language of MCL 15.362, the Court of Appeals majority held that, "as a matter of law, plaintiff could not recover damages under the WPA" given that, in threatening to report the Mayor's violation of Ordinance 68C, "plaintiff clearly intended to advance his own financial interests" and "did not pursue the matter to inform the public on a matter of

---

[28] *Shallal*, 455 Mich at 621 (citation and quotation marks omitted; alteration in original).

[29] *Id*. at 622.

[30] *Id*.

13

public concern."[31] In reaching this conclusion, the majority relied on *Shallal*, which the majority interpreted as holding that, "[i]n order to effectuate the purpose of the WPA . . . , when considering a retaliation claim under the act, *a critical inquiry* is whether the employee acted in good faith and with 'a desire to inform the public on matters of public concern . . . .'"[32] We disagree with the Court of Appeals' analysis because it is not supported by the statutory text of MCL 15.362 nor does it accurately characterize this Court's holding in *Shallal*.

As previously noted, in *Shallal*, this Court did consider generally a whistleblower's primary motivation for pursuing a claim under the WPA and, relying on federal caselaw that applied Michigan's WPA, we concluded that Shallal was precluded from using the WPA to insulate herself from termination "*where she knew she was going to be fired before threatening to report her supervisor*."[33] Therefore, it was because Shallal's prior knowledge of her impending termination incited her subsequent threat to report Quinn that this Court held that no reasonable juror could conclude that Shallal's threat was causally connected to her firing. There is, however, nothing in the plain language of MCL 15.362 that supports a broader requirement that in order to establish a viable claim under the WPA, a plaintiff must proceed under the WPA "out of an altruistic motive of protecting the public."[34]

---

[31] *Whitman*, 293 Mich App at 228-229.

[32] *Id*. at 230, quoting *Shallal*, 455 Mich at 621 (emphasis added; citation and quotation marks omitted).

[33] *Shallal*, 455 Mich at 622 (emphasis added).

[34] *Id*.

Defendants argue that the "altruistic motive" requirement articulated in the Court of Appeals opinion in this case is consistent with the WPA's underlying purpose of providing protection to the public. Yet the Court of Appeals relied on *Shallal* to judicially engraft onto MCL 15.362 the requirement that a plaintiff's motivation for engaging in protected activity be altruistic, i.e., to prevent injury to the public, and not self-serving, i.e., for the plaintiff's own personal gain. Indeed, the Court of Appeals majority's opinion is replete with references to Whitman's self-serving motivations, which, according to the Court of Appeals, rendered his WPA claim nonactionable.[35] However, this Court has explained that the WPA meets its objective of protecting the public

> by protecting the whistleblowing employee and by removing barriers that may interdict employee efforts to report violations or suspected violations of the law. Without employees who are willing to risk adverse employment consequences as a result of whistleblowing activities, the public would remain unaware of large-scale and potentially dangerous abuses.[36]

---

[35] For example, the Court of Appeals stated that Whitman could not recover damages under the WPA because his threat to report the Mayor was "clearly intended to advance his own financial interests" and that "when considering a retaliation claim under the act, a critical inquiry is whether the employee acted in good faith . . . ." *Whitman*, 293 Mich App at 228-229, 230. The Court of Appeals also stated that Whitman's claim is not actionable under the WPA because he was decidedly "acting . . . in the thoroughly personal and private interest of securing a monetary benefit in order to maintain his 'life style,'" Whitman's "complaint amounted to a private dispute over [his] entitlement to a monetary employment benefit," "plaintiff acted entirely on his own behalf," and "nowhere in the voluminous record is there any indication that good faith or the interests of society as a whole played any part in plaintiff's [threatened] decision to go to the authorities." *Id*. at 230-231 (citation and quotation marks omitted; alteration in original).

[36] *Dolan*, 454 Mich at 378-379.

Therefore, as long as a plaintiff demonstrates a causal connection between the protected activity and the adverse employment action, the plaintiff's subjective motivation for engaging in the protected activity in the first instance is not relevant to whether the plaintiff may recover under the act.

In sum, and contrary to the Court of Appeals majority's interpretation, *Shallal* does not hold that an employee's motivation is a factor in determining whether the employee was engaged in protected activity. Indeed, it bears repeating that having a specific primary motivation is neither a prerequisite for bringing a WPA claim nor a factor to be considered in determining whether a plaintiff had engaged in protected conduct. Accordingly, the statement in *Shallal* that "[t]he primary motivation of an employee pursuing a whistleblower claim 'must be a desire to inform the public on matters of public concern, and not personal vindictiveness,'"[37] and *Shallal*'s suggestion that the employee must act "out of an altruistic motive of protecting the public" are disavowed as dicta.

## D. APPLICATION

In this case, it is undisputed that the Mayor decided to withhold payment of unused sick, personal, and vacation time in violation of Ordinance 68C, a decision to which Whitman objected. It is also undisputed that Whitman reported the Mayor's violation of Ordinance 68C to the Mayor himself, city administrator Lowthian, and the city attorney, and that following Whitman's reporting of this violation, he was

---

[37] *Shallal*, 455 Mich at 621-622, quoting *Wolcott*, 691 F Sup at 1065.

16

discharged. Finally, Whitman did not knowingly make a false report given that the evidence reveals that the Mayor did in fact violate Ordinance 68C, nor is there any indication that a public body requested that Whitman participate in an investigation. Accordingly, Whitman engaged in conduct protected under the WPA.

To recover under the WPA, Whitman must therefore establish a causal connection between this protected conduct and the adverse employment decision by demonstrating that his employer took adverse employment action *because of* his protected activity.[38] At trial, Whitman presented evidence that his reporting of the Ordinance 68C violation made a difference in the Mayor's decision not to reappoint him and the Mayor, in turn, presented evidence to the contrary. However, because the Court of Appeals did not address the issue of causation when it held that Whitman's WPA claim failed as a matter of law, this question must be resolved on remand for the purpose of determining whether the circuit court's denial of defendants' motion for JNOV was proper.

## IV. CONCLUSION

We hold that the Court of Appeals majority erred in finding that as a "matter of law, plaintiff could not recover damages under the WPA" because he "did not pursue the matter to inform the public on a matter of public concern."[39] Our review of the WPA, in particular MCL 15.362, reveals that nothing in the statutory language addresses an employee's motivation for engaging in protected conduct, nor does any language mandate that the employee's primary motivation for pursuing a claim under the act be a

---

[38] See *Debano-Griffin*, 493 Mich 167.

[39] *Whitman*, 293 Mich App at 228-229.

desire to inform the public of matters of public concern.  Accordingly, the plain language of MCL 15.362 controls, and we clarify that a plaintiff's motivation is not relevant to the issue whether a plaintiff has engaged in protected activity and proof of any specific motivation is not a prerequisite to bringing a claim under the WPA.  To the extent that *Shallal* has been interpreted to mandate a specific motive, any language to that effect is disavowed as dicta unrelated to the essential holding of the case regarding the causal connection between the protected activity and the adverse employment decision.

Accordingly, we reverse the judgment of the Court of Appeals and remand this case to the Court of Appeals for consideration of all remaining issues on which that court did not formally rule, including whether the causation element of MCL 15.362 has been met.[40]

> Mary Beth Kelly
> Robert P. Young, Jr.
> Michael F. Cavanagh
> Stephen J. Markman
> Brian K. Zahra

MCCORMACK and VIVIANO, JJ., took no part in the decision of this case.

---

[40] The Court of Appeals shall consider the causation issue in light of this Court's recent decision in *Debano-Griffin*, 493 Mich 167.