*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

GARY JOKINEN, Personal Representative of the
ESTATE OF SHIRLEY JOKINEN,

        Plaintiff-Appellant,

v

BEAUMONT HOSPITAL TROY, WILLIAM
BEAUMONT HOSPITAL, doing business as
BEAUMONT HOSPITAL TROY, BEAUMONT
HEALTH, and WELLBRIDGE OF ROCHESTER
HILLS, LLC,

        Defendants-Appellees.

FOR PUBLICATION
June 09, 2025
10:25 AM

No. 370983
Oakland Circuit Court
LC No. 2023-199993-NH

Before: YATES, P.J., and YOUNG and WALLACE, JJ.

YATES, P.J.

In 2020, during the early days of the COVID-19 pandemic, Shirley Jokinen (the decedent) was treated for medical conditions, but she ultimately died. Plaintiff, Gary Jokinen, acting as the personal representative of the decedent's estate, filed suit against several of her medical providers on a theory of medical negligence. The trial court, relying on the Pandemic Health Care Immunity Act (PHCIA), MCL 691.1471 *et seq.*, granted summary disposition under MCR 2.116(C)(8) to all of the defendants in orders entered on August 10, 2023, and April 26, 2024. Because we conclude that, at the pleading stage, it appears that the decedent did not sustain injury by reason of healthcare services provided in support of the State of Michigan's response to the COVID-19 pandemic, we reverse the award of summary disposition and remand the case for further proceedings.

## I. FACTUAL BACKGROUND

On April 8, 2020, the 88-year-old decedent was transferred from a senior living facility to Beaumont Hospital–Troy, suffering from "altered mental status" after a fall. An examination of her revealed bruises on her arms and her leg, but no indication of pressure-related injuries such as bedsores. The following day, she was evaluated for a possible stroke and examined by a physician. Tests indicated a medium-to-high risk of developing pressure injuries. On April 10, 2020, a skin

tear on her buttocks was first noted. Over the next ten days, the decedent was treated for that injury and received other wound care.

On April 21, 2020, the decedent was discharged from Beaumont Hospital–Troy and moved to Wellbridge, where her pressure injury was observed. Over the next three weeks, the decedent's condition deteriorated. Although she was repeatedly assessed for COVID-19 symptoms, no such symptoms were ever noted. On May 12, 2020, the decedent's son requested that she be moved to Beaumont Hospital, where she was admitted with a sacral decubitus ulcer. Decedent passed away on May 14, 2020. Her death certificate listed the causes of death as sepsis due to infected decubitus ulcer, cardio myopathy, and CAD, meaning coronary artery disease.

On April 24, 2023, plaintiff filed a four-count complaint in the Oakland Circuit Court. In Count I, plaintiff alleged medical negligence on the part of the nursing staff of Beaumont Hospital–Troy, accusing the nursing staff of "one or more negligent acts and/or grossly negligent acts and/or omissions, and breach[ing] the applicable standard of care" in its treatment of the pressure injuries. In Count II, plaintiff alleged that Beaumont was liable, through the conduct of its nursing staff, for negligent or grossly negligent acts or omissions, in addition to a breach of the applicable standard of care, relating to the treatment of the decedent's pressure injuries. In Count III, plaintiff accused the Wellbridge nursing staff of "one or more negligent acts and/or grossly negligent acts and/or omissions" and breaching the applicable standard of care in its treatment of the pressure injuries. In Count IV, plaintiff alleged that Wellbridge was liable, through the conduct of its nursing staff, for negligent or grossly negligent acts or omissions, as well as a breach of the applicable standard of care, relating to the treatment of the decedent's pressure injuries.

Plaintiff attached to the complaint an "Affidavit of Merit," which described the standards of care applicable to the treatment provided by Beaumont, Wellbridge, and their respective nursing staffs, explained the manner in which the standards of care had been breached, and concluded that those breaches caused or contributed to the decedent's death. The affidavit did not include explicit assertions of gross negligence.

In lieu of answering the complaint, Beaumont submitted a motion for summary disposition, requesting dismissal of plaintiff's claims pursuant to MCR 2.116(C)(7) (immunity granted by law), (C)(8) (failure to state a claim on which relief can be granted), and (C)(10) (no genuine issue as to any material fact). Beaumont requested immunity under § 5 of the PHCIA, MCL 691.1475, which, according to § 7 of the PHCIA, MCL 691.1477, applied to healthcare services provided between March 29, 2020, and July 14, 2020. Beaumont also noted that plaintiff's claims sounded in medical malpractice, and "to the extent that any of the claims is asserted as an ordinary negligence claim, it must be dismissed."

In its brief in support of the motion, Beaumont claimed that the immunity afforded under the PHCIA was intended to apply broadly, that Beaumont provided services for COVID-19 during the statutory period of time, and that even if the decedent had developed a pressure ulcer during her treatment, that "was something that occurred in the context of the hospital and its agents and employees providing medical services for treatment of COVID-19." Beaumont further argued that if the decedent had developed a pressure ulcer that was either not diagnosed or not properly treated, "this was undoubtedly a byproduct of the very demands, restrictions, protocols, uncertainties, and overall chaos" caused by the COVID-19 pandemic. Beaumont offered an affidavit of meritorious

defense, stating that Beaumont and its nursing staff furnished appropriate care to the decedent and claiming that "the development and progression of skin breakdown in this case was not avoidable and occurred despite the ongoing and well documented interventions by the nursing staff."

Wellbridge denied plaintiff's allegations of negligence and gross negligence as untrue, and asserted, as an affirmative defense, that plaintiff's claims were all "barred by MCL 691.1475, MCL 691.1477." But Wellbridge did not promptly seek summary disposition under MCR 2.116(C)(7), (C)(8), or (C)(10).

In response to Beaumont's motion, plaintiff agreed that the claims sounded in professional negligence, but denied that the PHCIA afforded immunity to Beaumont because the decedent did not seek treatment at Beaumont for COVID-19, had not been diagnosed with COVID-19, and was never treated for COVID-19. Plaintiff argued that Beaumont had not furnished the decedent with care in support of the state's response to the COVID-19 pandemic, and insisted that MCL 691.1475 applies only to treatment related to COVID-19.

In reply, Beaumont cited Executive Order No. 2020-30, which Governor Whitmer signed on March 30, 2020, as evidence that the purpose of granting immunity during the early days of the COVID-19 pandemic was to enable healthcare facilities to provide the care that Michigan residents needed in the face of the unprecedented demands the pandemic created. Beaumont argued that the PHCIA was meant to apply broadly, that the pandemic adversely affected all aspects of healthcare, and that the impetus for the PHCIA was to protect healthcare workers and assure that they would not be held liable for the care they provided or the decisions they made, "given the unprecedented challenges created by this healthcare crisis." Citing records attached as exhibits, Beaumont also asserted that, although the decedent was not admitted to the hospital for the purpose of obtaining treatment for COVID-19, the virus was a factor in her care because she was tested for COVID-19 and placed in COVID-19 isolation.

On August 10, 2023, the trial court entered a two-page order awarding summary disposition to Beaumont pursuant to MCR 2.116(C)(8). After quoting §§ 5 and 7 of the PHCIA, the trial court stated that plaintiff's complaint failed to allege willful misconduct, gross negligence, intentional and willful criminal misconduct, or intentional infliction of harm, thereby failing to state a viable claim. Further, citing MCR 2.116(I)(5), the trial court ruled that any amendment of the complaint would not be justified, so the trial court dismissed plaintiff's claims against Beaumont.

The case then continued against Wellbridge, which filed a motion for summary disposition pursuant to MCR 2.116(C)(7) and (8), asserting that the PHCIA barred plaintiff's claims because the COVID-19 pandemic required "constant active assessments for signs and symptoms of COVID 19." Wellbridge attached 34 pages of records indicating that the decedent was repeatedly assessed for COVID-19 symptoms, but no such symptoms were detected. Parroting Beaumont's argument, Wellbridge insisted that the PHCIA applied broadly, so even if the decedent "developed pressure ulcers, cardio myopathy and CAD, the fact remains that this was undoubtedly a byproduct of the very demands, restrictions, protocols, uncertainties, and overall chaos considered by the governor and the legislature in determining that immunity should protect those having to provide services under such circumstances."

Plaintiff responded that Wellbridge did not furnish any care to the decedent in support of the state's response to COVID-19, but provided care "as part of their ordinary business as a private skilled nursing facility." Plaintiff noted that the decedent was not diagnosed with COVID-19, and she did not receive care or treatment related to COVID-19. Further, plaintiff asserted that "MCL 691.1475 specifies that it is Covid related treatment only that is subject to immunity," so it did not contemplate providing immunity under the circumstances of this case.

On April 26, 2024, the trial court granted Wellbridge's summary disposition motion under MCR 2.116(C)(8). As in the order granting Beaumont's motion, the trial court noted that plaintiff had not alleged willful misconduct, gross negligence, intentional and willful criminal misconduct, or intentional infliction of harm, and agreed with Wellbridge that plaintiff's complaint "failed to state a claim upon which relief can be granted." The trial court concluded that any amendment to the complaint would not be justified "based upon the allegations and argument before the Court," so it dismissed the claims against Wellbridge. This appeal of right follows.

## II. LEGAL ANALYSIS

On appeal, plaintiff contends that the trial court erred by granting summary disposition to defendants under MCR 2.116(C)(8).[1] "We review de novo a trial court's decision on a motion for summary disposition." *El-Khalil v Oakwood Healthcare, Inc*, 504 Mich 152, 159; 934 NW2d 665 (2019). A motion for summary disposition "under MCR 2.116(C)(8) tests the *legal sufficiency* of a claim based on the factual allegations in the complaint." *Id*. "When considering such a motion, a trial court must accept all factual allegations as true, deciding the motion on the pleadings alone." *Id*. at 160. The interpretation and application of a statute presents issues of law, which this Court reviews de novo. *Whitman v City of Burton*, 493 Mich 303, 311; 831 NW2d 223 (2013). Applying these principles, we must decide whether the trial court erred in awarding summary disposition to defendants under MCR 2.116(C)(8) based on the PHCIA, MCL 691.1471 *et seq.*

## A. THE PHCIA

In response to the COVID-19 pandemic, Governor Whitmer declared a state of emergency on March 10, 2020. Executive Order No. 2020-4. A series of additional executive orders followed, including EO 2020-30, issued on March 29, 2020, which afforded immunity to healthcare facilities and professionals in certain circumstances through the following language:

> Consistent with MCL 30.411(4), any licensed health care professional or designated health care facility that provides medical services in support of this state's response to the COVID-19 pandemic is not liable for an injury sustained by a person by reason of those services, regardless of how or under what circumstances

---

[1] Because the PHCIA, MCL 691.1471 *et seq.*, which formed the basis for the trial court's decision to award summary disposition, confers immunity in certain circumstances, see MCL 691.1475, the trial court could have considered invoking MCR 2.116(C)(7). But the trial court unambiguously stated in both of its orders awarding summary disposition that it was relying on MCR 2.116(C)(8) as the sole basis for its rulings. Thus, we must follow the trial court's lead in reviewing its orders granting summary disposition to defendants.

-4-

or by what cause those injuries are sustained, unless it is established that such injury or death was caused by the gross negligence, as defined in MCL 30.411(9), of such health care professional or designated health care facility. [EO 2020-30, ¶ 7.]

That immunity was continued under Executive Order No. 2020-61, but was rescinded on July 15, 2020, by Executive Order No. 2020-150.

Three months later, our Legislature codified the immunity granted in EO 2020-30 and EO 2020-61 by enacting MCL 691.1475, which mirrored the language of the executive orders, stating:

A health care provider or health care facility that provides health care services in support of this state's response to the COVID-19 pandemic is not liable for an injury, including death, sustained by an individual by reason of those services, regardless of how, under what circumstances, or by what cause those injuries are sustained, unless it is established that the provision of the services constituted willful misconduct, gross negligence, intentional and willful criminal misconduct, or intentional infliction of harm by the health care provider or health care facility.

That immunity applied to services provided "on or after March 29, 2020 and before July 14, 2020." MCL 691.1477. The PHCIA defines "gross negligence" as "conduct so reckless as to demonstrate a substantial lack of concern for whether an injury results," and "willful misconduct" as "conduct or a failure to act that was intended to cause harm." MCL 691.1473(a), (e).

This Court has already analyzed the PHCIA in two published opinions. First, in *Warren v McLaren Flint*, ___ Mich App ___; ___ NW3d ___ (2024) (Docket No. 366226), the plaintiff went to the hospital on March 10, 2020, complaining of shortness of breath, and was thereafter admitted to the COVID-19 floor. He later tested positive for COVID-19. He also developed pressure ulcers during his hospitalization, and so he was transferred to the Veterans Affairs Ann Arbor Healthcare System for treatment for respiratory failure and a sacral decubitus ulcer. After he was discharged, he filed suit against McLaren Flint and alleged "negligent or grossly negligent acts or omissions" involving the hospital and its nursing staff, but his attached affidavit of merit did not mention gross negligence. *Id.* at ___; slip op at 2. The trial court awarded summary disposition to the defendant because the plaintiff developed pressure ulcers while hospitalized for COVID-19, and the plaintiff had not pleaded facts supporting a finding of gross negligence. *Id.* at ___; slip op at 2-3. The trial court also decided that MCL 691.1475 was not unconstitutionally vague as applied to the plaintiff. *Id.* at ___; slip op at 3.

On appeal, the plaintiff argued that the treatment of his ulcers was provided in the ordinary course of the defendant's business, not specifically to support the state's response to the pandemic. *Id.* at ___; slip op at 6. This Court disagreed, opining that the care provided to the plaintiff satisfied the statutory definition of "health care services" as employed in MCL 691.1473(d). *Id.* at ___; slip op at 7. This Court defined the inquiry as whether the services were provided "in support of this state's response to the COVID-19 pandemic," as required under MCL 691.1475. *Id.* Interpreting the statutory language, this Court held that the "defendant was covered by this statute if it provided any healthcare services that assisted, helped, or promoted the state's reactions and actions taken as a result of the COVID-19 pandemic." *Id.* at ___; slip op at 8. This Court also explained that this

statutory immunity covered "both regular medical care and medical treatment specific to COVID-19." *Id*. Further, this Court ruled that the broad statutory language "demonstrates that all possible deaths or injuries are covered by the statute unless excepted." *Id*. at ___; slip op at 9. Pointing out that the plaintiff "presented at the hospital with signs of COVID-19, was admitted to the COVID-19 floor for COVID-19 treatment, and allegedly developed pressure ulcers as a result of that care," this Court stated that "[s]uch a sequence of events is covered by the plain language of the statute." *Id*. at ___; slip op at 9-10.

Several weeks later, this Court again addressed the PHCIA in *Skipper-Baines v Bd of Hosp Managers for the City of Flint*, ___ Mich App ___; ___ NW3d ___ (2024) (Docket No. 365137). In that case, the 91-year-old decedent was admitted to a hospital after his granddaughter found him unresponsive. He was treated for gallbladder disease and placed in a room with a mentally unstable patient known to have violent proclivities. The roommate attacked the decedent, causing injuries. The decedent was treated for his injuries, but ultimately died. He had contracted COVID-19 after his admission to the hospital, and an autopsy report determined that he had died from pneumonia associated with COVID-19. *Id*. at ___; slip op at 1-2. The decedent's estate filed suit against the hospital, alleging medical malpractice and negligence, asserting that the roommate's assault was a factor in the decedent's death, and that the decedent "should not have been placed in a room with a mentally unstable person known to be violent and that defendant's staff should have been better equipped to intervene in the event of a violent outburst." *Id*. at ___; slip op at 2. But the trial court granted summary disposition to the defendant under MCR 2.116(C)(7) because the defendant was immune from liability under the PHCIA. *Id*.

This Court reversed, explaining that the hospital had not provided services to the decedent in support of the state's response to the pandemic, and that the lawsuit stemmed "entirely from the beating inflicted upon the decedent by his roommate." *Id*. at ___; slip op at 3. This Court observed that the decedent did not contract COVID-19 until after he was hospitalized for an unrelated illness, he was recovering from a gallbladder procedure when he was attacked, the decedent's roommate was not being treated for COVID-19, and there was no reason to believe that the attack was related to COVID-19. *Id*. This Court explained that the alleged negligent act was placing the decedent in a room with an unsafe roommate, and the alleged omission was failing to use adequate safeguards to protect the decedent from the roommate. *Id*. Accordingly, this Court stated:

> It is clear to us that neither of those were done in support of the pandemic response. There certainly will be gray area with respect to whether medical services were offered in support of the state's pandemic response, but this particular case is black and white. The alleged acts, omissions, and injuries were wholly unrelated to the pandemic, so deeming defendant immune would contravene the Legislature's clearly-communicated intent to limit this immunization to services stemming from the pandemic. The fact that the decedent apparently contracted COVID-19 at some point following his admission does not change the fact that he was not being treated at the hospital for COVID-19 or that the incident giving rise to this litigation was completely separate. [*Id*.]

This Court concluded that "there was absolutely no connection between the alleged malpractice and the pandemic," so "there is no immunity[,]" *id*. at ___; slip op at 4, despite the undisputed fact

that the cause of the decedent's death was "COVID-19 associated pneumonia and complications thereof complicated by hypertensive and atherosclerotic cardiovascular disease." *Id.* at ___; slip op at 2. Thus, this Court reversed the award of summary disposition to the defendant hospital.

## B. APPLICATION OF THE PHCIA

Applying our binding precedent, we readily conclude that defendants are not immune from liability for medical malpractice and ordinary negligence. The immunity conferred by the PHCIA in MCL 691.1475 just applies to injuries sustained "by reason of" services provided by a healthcare provider or facility "in support of this state's response to the COVID-19 pandemic." Unlike the plaintiff in *Warren*, the decedent in this case was not admitted to the hospital with symptoms of COVID-19, she was never treated for COVID-19, and there is no indication that she ever tested positive for COVID-19. Indeed, those facts make the request for immunity here even weaker than the immunity claim that this Court rejected in *Skipper-Baines*, where the decedent suffered injuries unrelated to COVID-19, but subsequently contracted COVID-19 while hospitalized, and then died of the disease.

Defendants argue that even if the decedent developed pressure ulcers that were not properly diagnosed or treated, that deficiency was "a byproduct of the very demands, restrictions, protocols, uncertainties, and overall chaos considered by the governor and the legislature." But the trial court granted summary disposition under MCR 2.116(C)(8), and nothing in the complaint even suggests that any factual basis for that argument exists. Because relief under MCR 2.116(C)(8) depends on nothing but the contents of the pleadings, *El-Khalil*, 504 Mich at 160, we cannot review evidence or factual allegations presented by defendants. Beyond that, if we accept defendants' capacious approach to the immunity granted by the PHCIA in MCL 691.1475, "it is difficult to imagine any scenario in which a medical malpractice suit arising from acts and omissions occurring during the COVID-19 emergency could proceed." *Skipper-Baines*, ___ Mich App at ___; slip op at 4. And as this Court astutely observed in *Skipper-Baines*, "[t]he Legislature and the Governor would not have limited the immunity conferred pursuant to this statute to services supporting the pandemic response if it actually intended for all medical providers to be immune from all liability short of gross negligence." *Id.* Consequently, we reverse the trial court's award of summary disposition to defendants under MCR 2.116(C)(8) and remand the case for further consideration in a manner consistent with this opinion.[2]

Reversed and remanded for further proceedings. We do not retain jurisdiction.

/s/ Christopher P. Yates
/s/ Adrienne N. Young
/s/ Randy J. Wallace

---

[2] Because of our resolution of the PHCIA immunity issue in plaintiff's favor, we need not address plaintiff's arguments concerning gross negligence or plaintiff's contention that MCL 691.1475 is unconstitutionally vague.