# STATE OF MICHIGAN

# COURT OF APPEALS

ROBERT C. OHLMAN PROTECTION TRUST,

Petitioner-Appellant,

v

DEPARTMENT OF TREASURY,

Respondent-Appellee.

UNPUBLISHED
June 25, 2015

No. 320831
Tax Tribunal
LC No. 00-449613

Before: RONAYNE KRAUSE, P.J., and MURPHY and SERVITTO, JJ.

PER CURIAM.

Petitioner, the Robert C. Ohlman Protection Trust (the trust), appeals as of right a final opinion and judgment issued by the Michigan Tax Tribunal (MTT). The MTT upheld a determination by respondent Department of Treasury (the department) that there was no entitlement to a principal residence exemption (PRE) for tax years 2008, 2009, 2010, and 2011 with respect to real property owned by Robert C. Ohlman (Ohlman) in an individual capacity up until a November 2009 conveyance and thereafter owned by Ohlman in a representative capacity as trustee of the trust. We affirm.

Ohlman acquired the real property at issue in 1999, holding fee-simple title in an individual capacity. At that time, Ohlman filed an affidavit for a PRE, averring that he owned and occupied the property as his principal residence. See MCL 211.7cc(1) and (2); *Marie De Lamielleure Trust v Dep't of Treasury*, 305 Mich App 282, 285; 853 NW2d 708 (2014). The PRE affidavit was accepted by the assessor, and for several years Ohlman enjoyed an exemption from taxes levied by the local school district to the extent provided in MCL 380.1211 of the revised school code. MCL 211.7cc(4). Under MCL 211.7cc(2), "[i]f an owner of property filed an affidavit for an exemption under this section before January 1, 2004, that affidavit shall be considered the affidavit required under this subsection for a . . . [PRE] and that exemption shall remain in effect until rescinded as provided in this section." This language is implicated here, given that Ohlman filed the accepted PRE affidavit in 1999. With respect to rescission of a PRE, MCL 211.7cc(5) requires an owner of property to file a PRE rescission when the owner no

longer uses the property as a principal residence.[1]  Additionally, MCL 211.7cc(4) provides that an assessor is to keep a property exempt after a PRE affidavit has been accepted, that is until "the property is transferred or . . . is no longer a principal residence[.]"

In November 2009, Ohlman established the trust, and he then executed a quitclaim deed as grantor, conveying the property to himself as trustee of the trust, while personally reserving a life estate interest in the property.  Before proceeding with the factual and procedural history of the case, we make some observations regarding the legal impact of the 2009 conveyance, as it is necessary to do so in order to provide some context to our subsequent discussion of the case.  The Michigan Trust Code (MTC), MCL 700.7101 *et seq.*,[2] governs "trusts as defined in . . . [MCL 700.]1107."  MCL 700.7102.  And MCL 700.1107(n) defines a "trust" as including "an express trust, private or charitable."  An "express trust" is "[a] trust created with the settlor's express intent, usu. declared in writing; an ordinary trust as opposed to a resulting trust or a constructive trust."  *Black's Law Dictionary* (7th ed).  And MCL 555.16 provides that "[e]very express trust, valid as such in its creation, . . . *shall vest the whole estate in the trustees*, in law and in equity, subject only to the execution of the trust . . . ."  (Emphasis added.)  Accordingly, the legal titleholder of the real property following the execution of the quitclaim deed became Ohlman, *in a fiduciary capacity as trustee of the trust*, not the trust itself, although such property is typically referred to as trust property.

Next, we need to distinguish between the legal owner or titleholder of real property and the "owner" of real property for purposes of a PRE under the General Property Tax Act (GPTA), MCL 211.1 *et seq.*  See *VanderWerp v Plainfield Charter Twp*, 278 Mich App 624, 630-631; 752 NW2d 479 (2008).  Only an "owner" of property can claim a PRE, MCL 211.7cc(2), and an "owner" includes "[a] person holding a life lease in property previously sold or transferred to another," MCL 211.7dd(a)(*v*).  The department acknowledges that Ohlman's life estate constitutes a "life lease" in the property.  And a "person," in relationship to defining an "owner" who may validly hold a PRE under MCL 211.7cc, only encompasses "individual[s]," MCL 211.7dd(b), which would exclude the trust as a potential "owner" of the property.  Accordingly, the trust was neither the legal titleholder of the real property, nor could it be the "owner" of the property for purposes of having or obtaining a PRE under the GPTA.  On the other hand, Ohlman's status, previously as an individual holding fee simple title to the property and, following the 2009 conveyance, as the holder of a life estate interest in the property, generally qualified him for a PRE.  Furthermore, the conveyance of the property did not qualify as a "transfer of ownership" for purposes of the GPTA, making it unnecessary to rescind or terminate the existing PRE or to apply for a new PRE.  As recognized by the department, a transfer of

---

[1] A "principal residence" is defined as "the 1 place where an owner of the property has his or her true, fixed, and permanent home to which, whenever absent, he or she intends to return and that shall continue as a principal residence until another principal residence is established."  MCL 211.7dd(c).

[2] The MTC falls under the broad umbrella of the Estates and Protected Individuals Code (EPIC), MCL 700.1101 *et seq.*

ownership of property does not include "[a] transfer of that portion of property subject to a life estate or life lease retained by the transferor, until expiration or termination of the life estate or life lease." MCL 211.27a(7)(c).[3] In sum, the 2009 conveyance of the real property to Ohlman as the trustee of the trust, *in and of itself*, did not provide a basis to rescind, terminate, or otherwise disturb the existing PRE.

In October 2011, the department, after having conducted an audit, mailed a PRE denial notice *addressed solely to the trust*, pertaining to tax years 2008 through 2011.[4] Of course, as the trust so vigorously argues on appeal and as reflected in our discussion above, it was not the trust's PRE to lose – the trust never had a PRE, nor was it legally capable of having a PRE. Rather, Ohlman held the PRE in the capacity as an individual titleholder of the property prior to the 2009 conveyance and, thereafter, in the capacity as an individual holding a life estate interest. The department's denial notice asserted that the property was not being used as a principal residence as defined in and required by MCL 211.7dd (see footnote 1 above). The department indicated that a corrected tax bill would be forthcoming and that the trust had appellate rights, which included an initial informal conference with the department. The notice did not elaborate or provide specifics with respect to why the department concluded that the property was not being used as a principal residence.

With respect to the department directing the PRE denial notice to the trust instead of Ohlman, MCL 211.7cc(8) provides, in relevant part, as follows:

> [I]f the department of treasury determines that the property is not the principal residence of *the owner claiming the exemption*, the department shall send a notice of that determination to the local tax collecting unit and to *the owner of the property claiming the exemption*, indicating that the claim for exemption is denied, stating the reason for the denial, and advising *the owner claiming the exemption* of the right to appeal the determination to the department of treasury and what those rights of appeal are. [Emphasis added.]

Once again, for purposes of a PRE under the GPTA, Ohlman was the owner of the property, personally claiming the PRE for the tax years at issue, not the trust, which was legally incapable of having a PRE. However, given that the trustee of the trust was Ohlman, to whom all trust-related documents necessarily flowed in light of his representative status and fiduciary

---

[3] We also note that a transfer of ownership of property does not include a conveyance to a trust if the settlor conveys the property to the trust and the settlor is the "sole present beneficiary" of the trust. MCL 211.27a(6)(c)(*i*) and (7)(f). These provisions also appear to be applicable here as claimed by the department, but we are not entirely sure as the trust was not made part of the record, and, regardless, there is no need to rule on the matter, considering the applicability of MCL 211.27a(7)(c).

[4] MCL 211.7cc(8) allows the department to review the validity of a PRE "for the current calendar year and for the 3 immediately preceding calendar years."

role, and considering that the PRE denial notice was mailed to Ohlman's address and received by him, Ohlman indeed had full notice of the department's action.

Ohlman, with the assistance of counsel, pursued an informal conference with the department, resulting in a referee's written recommendation. The referee first noted that the department had determined that *the trust* did not qualify for a PRE because it was not an "owner" under the GPTA, considering that the trust was not a "person" or "individual." The referee then indicated that the department had also concluded *that Ohlman himself was not entitled to a PRE* for the tax years at issue, despite individually owning the property in fee simple prior to the November 2009 conveyance and having a life estate interest thereafter. The referee stated that the department had found that "Ohlman did not occupy the subject property as a principal residence but rather resided in Florida since 2006." Next, the referee referred to Ohlman's actions in filing income tax returns as a resident of other states, along with also filing nonresident Michigan income tax returns for the years 2008 through 2010, thereby barring a Michigan PRE under MCL 211.7cc(3)(c), regardless of the fact that Ohlman had amended the 2008-2010 Michigan tax returns to "resident" returns.[5] Finally, the referee noted that the department had found that Ohlman was not entitled to a PRE under MCL 211.7cc(3)(a), considering that he had claimed a similar homestead exemption in Florida for the years 2008 through 2010.[6] The referee, in her own findings, indicated that Ohlman did not dispute that the trust had no right to a PRE. The referee agreed with the department's reasons for personally denying Ohlman himself the PRE, concluding that "Ohlman failed to meet his burden of proof to substantiate that he occupied the subject property as his principal residence during the tax years at issue." A director with the Bureau of Local Government Services reviewed the referee's recommendation and adopted it, finding that "the recommendation [was] supported by legal authority and [was a] reasoned opinion." Despite addressing and directing the PRE denial notice to the trust, the department quite clearly denied a PRE for both the trust *and* Ohlman personally.

Even though the department proceedings had ultimately resulted in a denial of a PRE relative to the trust *and* Ohlman, the trust alone next petitioned the MTT's Small Claims Division, challenging the determinations. We note that MCL 211.7cc(13) provides that "[a]n *owner* may appeal a . . . final decision of the department of treasury . . . to the residential and small claims division of the . . . [MTT] within 35 days of that decision." (Emphasis added.) Given that the trust was not an "owner" under the GPTA, as fully explained earlier, the trust lacked the legal capacity to even pursue an appeal to the MTT. As will be gleaned from the following discussion, the MTT proceedings focused on Ohlman's personal entitlement to a PRE, not the trust's entitlement to an exemption, and the appeal to the MTT was effectively an appeal

---

[5] A person is not entitled to a PRE if "[t]hat person has filed a nonresident Michigan income tax return, except [for] active duty military personnel stationed in this state . . . ." MCL 211.7cc(3)(c).

[6] A person is not entitled to a PRE if "[t]hat person has claimed a substantially similar exemption, deduction, or credit on property in another state that is not rescinded." MCL 211.7cc(3)(a).

by Ohlman personally.[7] Indeed, the petition filed with the MTT indicated that the basis for the appeal was that "*Ohlman* reserve[d] a life estate in property and utilized[d] it as his principal residence." (Emphasis added.)

In a brief supporting the petition, it was argued that the PRE was never revoked and remained in place at the time of the 2009 conveyance and thereafter, that Ohlman amended his Michigan tax returns for 2008-2010, changing them from nonresident to resident returns, and that he filed a resident Michigan tax return for 2011.[8] The brief further provided that Ohlman had accidently claimed a homestead exemption on a Florida parcel, beginning in 2004, that Ohlman immediately revoked the Florida exemption when he discovered it, thereby ending that exemption in 2011, that with regard to the Florida homestead exemption in the years 2008-2010, Ohlman was taking steps to retroactively rescind the exemptions, and that the Michigan property at issue was Ohlman's true and fixed residence, where he intended to return whenever absent.

Following a hearing with respect to the trust's petition, an MTT hearing referee issued a proposed opinion and judgment. The MTT referee concluded that, as to the tax years 2008 through 2010, there was no entitlement to a PRE because Ohlman had claimed a substantially similar exemption in regard to property located in Florida, MCL 211.7cc(3)(a). The referee stated that while "petitioner" testified that he was in the process of rescinding the Florida homestead exemption for tax years 2008-2010, which clearly was a reference to *Ohlman's* testimony,[9] he had failed to accomplish a rescission as of the date of the hearing. Thus, MCL 211.7cc(3)(a) effectively dictated that there was no entitlement to a PRE. With respect to tax year 2011, the referee concluded that although Ohlman met "the definition of owner as a person holding a life lease," Ohlman failed to prove that the property was his "principal residence" as defined in MCL 211.7dd(c), given that the weight of the evidence did not show that he occupied the property. The referee reviewed "the large amount of documents" filed by Ohlman. The

---

[7] An argument can certainly be made that the MTT lacked jurisdiction over the appeal filed solely by the trust, which in turn would undermine our jurisdiction. However, we shall proceed on the basis that the appeal was effectively pursued by Ohlman personally.

[8] The brief alluded to a previous PRE dispute between Ohlman and the department years earlier, where Ohlman had filed nonresident Michigan tax returns, which resulted in the department denying him a PRE. The MTT agreed with Ohlman's challenge at that time, allowing the PRE to stand because Ohlman considered the property to be his true and fixed home to which he always intended to return when away, regardless of the fact that he filed nonresident Michigan tax returns. Subsequently, pursuant to 2003 PA 105, the Legislature enacted a new provision, stating, as noted earlier, that a person who files a nonresident Michigan income tax return is not entitled to a PRE. MCL 211.7cc(3)(c).

[9] We acknowledge the trust's argument that the referee and the MTT repeatedly and inaccurately referred interchangeably to the trust (petitioner) and Ohlman personally. Obviously, references to the "petitioner" testifying pertained to Ohlman, not the trust entity, although Ohlman could speak on behalf of the trust, given his "trustee" status, and on his own behalf personally.

referee acknowledged the bills, invoices, and insurance documents submitted by Ohlman showing that services were provided to the subject property. But the referee also noted that Ohlman received his mail at a Michigan PO box, suggesting that the property was not his principal residence, and that, while Ohlman filed a resident Michigan tax return for 2011, he listed the PO box as his address. In further support of his decision, the referee indicated that Ohlman did not have a Michigan driver's license or voter's registration card, that while he had one Michigan-registered vehicle, he had several vehicles registered in Florida, and that Ohlman owned residential real property in Florida, where he would spend several months of the year.

The trust filed exceptions to the referee's proposed opinion and judgment, arguing that the trust never had a PRE, so there was no PRE to deny and thus the property remained exempt. The trust relied on an unpublished opinion from this Court in support of that particular argument. The trust also maintained that collateral estoppel barred the referee's ruling, where the MTT had found years earlier, as to the previous PRE dispute, that the property was indeed Ohlman's principal residence. Next, the trust contended that the evidence proved that the property was Ohlman's true and fixed home. Finally, in very cursory form, the trust argued that Ohlman was attempting to undo the Florida homestead exemption with respect to tax years 2008-2010 and that the MTT, at a minimum, "should find that Robert Ohlman is entitled to a PRE for 2011 and beyond."

The MTT then issued a final opinion and judgment addressing the exceptions. The MTT fully agreed with the referee that for tax years 2008 through 2010, MCL 211.7cc(3)(a) precluded a PRE because Ohlman had claimed a homestead exemption in Florida for those years and verification of any attempted rescission had not been submitted prior to the hearing date. With respect to tax year 2011, the MTT concluded that the referee had reached the correct result but "on incorrect grounds." The MTT first noted that a trust could not qualify as an "owner" for purposes of obtaining a PRE. The MTT then indicated that Ohlman was an "owner" and could generally claim a PRE and that, "[a]s such, a valid PRE claim was present and eligible for review by the [d]epartment . . . under MCL 211.7[cc]."

The MTT further found that, under MCL 211.7cc(5),[10] Ohlman was required by law to rescind the PRE when the property no longer qualified as Ohlman's principal residence, which "rescission should . . . have been filed in accordance with the 2008 tax year." The MTT elaborated:

> [B]y claiming the similar exemption in another state in the three tax years
> prior, Petitioner has effectively lost the exemption, regardless of whether or not he

---

[10] MCL 211.7cc(5) provides, in pertinent part, "that not more than 90 days after exempted property is no longer used as a principal residence by the owner claiming an exemption, that owner *shall rescind the claim of exemption* by filing with the local tax collecting unit a rescission form prescribed by the department of treasury." (Emphasis added.)

had rescinded the application as required. See MCL 211.7cc(3)(e).[11] Petitioner would only be entitled to the exemption for tax year 2011 had a new application been filed by June 1st in accordance with MCL 211.7[]cc(2). As Petitioner failed to do so, further inquiry as to whether the subject parcel is used as Petitioner's principal residence is not needed.

The MTT also proceeded to adopt the referee's proposed opinion and judgment, "as modified" by the MTT's ruling. This appeal then ensued.

Our review of an MTT decision is limited, given that we may reverse a ruling only in the presence of fraud, error of law, adoption of wrong principles, or factual findings unsupported by competent, material, and substantial evidence. *Mich Props, LLC v Meridian Twp*, 491 Mich 518, 527; 817 NW2d 548 (2012). The interpretation and application of tax statutes constitute legal questions that are subject to de novo review. *Danse Corp v City of Madison Hts*, 466 Mich 175, 178; 644 NW2d 721 (2002). The foremost rule of statutory construction is to discern and give effect to the intent of our Legislature, and we do so by examining the most reliable evidence of that intent, which is the language of the statute itself. *Whitman v City of Burton*, 493 Mich 303, 311; 831 NW2d 223 (2013). If the language of the statute is clear and unambiguous, we must enforce the statute as written and no judicial construction is permitted. *Id.* Tax exemptions are strictly construed against the taxpayer, given that exemptions represent the antithesis of tax equality. *De Lamielleure Trust*, 305 Mich App at 284.

---

[11] MCL 211.7cc(3)(e) provides that the following described person is not entitled to a PRE under the law:

That person has previously rescinded an exemption under this section for the same property for which an exemption is now claimed and there has not been a transfer of ownership of that property after the previous exemption was rescinded, if either of the following conditions is satisfied:

(*i*) That person has claimed an exemption under this section for any other property for that tax year.

(*ii*) That person has rescinded an exemption under this section on other property, which exemption remains in effect for that tax year, and there has not been a transfer of ownership of that property.

This provision would not have barred Ohlman from having a PRE for 2011, and we fail to understand the MTT's reference to MCL 211.7cc(3)(e) in the context of the sentence preceding the purported supporting citation; there is no relevant connection. It quite clearly appears that the MTT meant to cite MCL 211.7cc(3)(a) not (3)(e), given that it is MCL 211.7cc(3)(a) that precludes a PRE when a substantially similar exemption was claimed in another state. The underlying sentence in the MTT's opinion referred to Ohlman "claiming the similar exemption in another state."

The trust devotes a great portion of its brief to the argument that the trust never had the PRE and was not legally capable of having a PRE, that Ohlman alone claimed and held the PRE in his personal capacity absent any rescission or revocation during the tax period at issue, that the department was thus required to direct the PRE denial notice to Ohlman as the "owner" of the property claiming the PRE, MCL 211.7cc(8), that the department failed to do so when it instead directed the notice to the trust, and that the department therefore did not validly rescind or revoke the PRE. The trust employs the mantra that the department "cannot revoke what never existed," i.e., a trust-held PRE.

The trust's argument ignores the reality of the proceedings within the department and the MTT. It is true that if the department makes a determination that real property does not qualify as a principal residence, the department must "send a notice of that determination to the local tax collecting unit and to the owner of the property claiming the exemption." MCL 211.7cc(8). While the PRE denial notice here was addressed or directed to the trust, which was not the owner of the property claiming the exemption, the notice was nevertheless effectively "sen[t]" to the correct owner – Ohlman; he received the notice, acted on the notice, and defended against the department's assertions contained in the notice. Although the PRE denial notice should have been addressed or directed to Ohlman personally, it is abundantly clear that the department took the stance from the very beginning that neither the trust nor Ohlman personally was entitled to a PRE, and it is likewise abundantly clear that Ohlman was fully cognizant of the fact that the department was denying or rescinding *Ohlman's* PRE. Throughout the case, Ohlman argued that he was entitled to the PRE, despite the department's protestations to the contrary. The department, the department referee, the MTT referee, the MTT, and Ohlman himself all recognized the undisputed fact that the trust did not and could not have a PRE. Rather, the department, the department referee, the MTT referee, the MTT, and Ohlman himself all focused on the question whether Ohlman personally was entitled to the PRE and on whether the department properly denied his PRE. And, as alluded to earlier, the appellate process within the MTT could not even have been maintained if the proceedings were viewed as encompassing the trust and not Ohlman. The unpublished case that the trust proclaims supports its position did not concern unique procedural facts and legal relationships and interests comparable to those involved in this case. In sum, the argument lacks merit.

In an associated argument, the trust next argues that the MTT erred in upholding the department's denial of the PRE by relying on the Florida homestead exemption and by making findings about the PRE, where the MTT continually referred to or spoke in terms of a PRE or exemption held or requested by the "petitioner," which was the trust and not Ohlman. The trust argues that it never had a Florida homestead exemption, that it never had a Michigan PRE, and that it never sought an exemption of any kind. We conclude that the MTT was guilty of sloppiness in its writing and references, but it is plain to us, and we believe plain to the trust and Ohlman as well, that the MTT fully understood that the discussion of the PRE and the Florida homestead exemption pertained to Ohlman personally, despite the lapses in clear draftsmanship. The MTT expressly recognized that the trust could not hold a PRE. The trust's argument simply does not warrant reversal.

The trust additionally contends that reversal is proper because the problem with the nonresident Michigan tax returns was corrected by way of amendment of the 2008-2010 returns.

The fatal flaw with this argument is that the MTT based its ruling on MCL 211.7cc(3)(a), given the existence of the Florida homestead exemption for tax years 2008-2010, and not on MCL 211.7cc(3)(c), which addresses nonresident Michigan tax returns. Accordingly, this argument fails.

The trust next maintains that because the department indicated in the previous PRE dispute that an amendment of Ohlman's Michigan tax returns would fix or correct any problems with the PRE, the department should be forced to recognize that an amendment or rescission of the Florida homestead exemption for 2008-2010 would also have corrective effect and negate disqualification of the PRE under MCL 211.7cc(3)(a). Assuming that this argument has any force, which is questionable, the trust can only state, as it did below, that Ohlman has taken steps to retroactively rescind the Florida homestead exemption for 2008-2010 and offered to pay any resulting additional tax. There is no indication in the record that the Florida homestead exemption has been successfully rescinded, nor does the trust offer any supporting legal authority under Florida law regarding the viability of a retroactive rescission. Moreover, there is no documentary evidence in the record even supporting the assertion that Ohlman has made efforts to rescind the Florida homestead exemption for 2008-2010. Reversal is unwarranted.

The trust, relying on the prior PRE dispute between the department and Ohlman, also argues that collateral estoppel precludes any attempt to revisit the previously determined conclusion that the property served as Ohlman's principal residence. This argument is wholly lacking in merit. "Collateral estoppel bars relitigation of an issue in a new action arising between the same parties or their privies when the earlier proceeding resulted in a valid final judgment *and the issue in question was actually and necessarily determined* in that prior proceeding." *Leahy v Orion Twp*, 269 Mich App 527, 530; 711 NW2d 438 (2006) (emphasis added). The issue in question in the current litigation concerned whether the property served as Ohlman's principal residence *for tax years 2008-2011*, which issue was not and could not have been litigated in tax years preceding that timeframe. A determination that the property was a principal residence in, for example, 1999, cannot govern the question whether the property was a principal residence in 2008. The facts attendant to any given tax year have to be individually assessed in determining a person's principal residence. Moreover, the GPTA has been amended numerous times over the years, including the change under 2003 PA 105 in which the Legislature decided to bar PREs for persons filing nonresident Michigan income tax returns. The doctrine of collateral estoppel is simply not implicated in this case.

Finally, the trust contends that, in light of all of the evidence, it was established that the property, with respect to 2008-2011, was the one place where Ohlman had his true, fixed, and permanent home to which, whenever absent, he intended to return, thereby satisfying the definition of "principal residence" found in MCL 211.7dd(c). With respect to 2008-2010, this argument is unavailing, considering that the sole reason for the MTT's denial of the PRE was the existence of the Florida homestead exemption. MCL 211.7cc(3)(a) plainly and unambiguously provides that a person is not entitled to a PRE if "[t]hat person has claimed a substantially similar exemption, deduction, or credit on property in another state that is not rescinded." Other than the retroactive rescission argument that we rejected above, the trust presents no argument that MCL 211.7cc(3)(a) does not govern this dispute. With respect to tax year 2011, although the MTT referee found that the property did not serve as Ohlman's principal residence based on all of the

surrounding circumstances, the MTT declined to address that particular question. Rather, the MTT concluded that had Ohlman complied with the law and rescinded the PRE back in 2008 because of his existing Florida homestead exemption, he would have needed to file a new PRE affidavit and application for tax year 2011 by June 1, and he failed to do so, undermining any entitlement to a 2011 PRE. The MTT essentially treated the situation as if Ohlman had rescinded the PRE in 2008, as required by MCL 211.7cc(3)(a) and (5), declining to allow him any benefit of his misdoing. Although we are uncertain of the soundness of the MTT's approach, the trust does not assail or address the basis for the MTT's ruling regarding 2011, other than complaining about how the MTT improperly referred to the "petitioner" having or seeking a PRE, which argument has already been rejected. When an appellant fails to dispute the basis of a lower tribunal's ruling, we need not even consider granting the relief being sought by the appellant. *Derderian v Genesys Health Care Sys*, 263 Mich App 364, 381; 689 NW2d 145 (2004). Accordingly, we reject the trust's challenge of the MTT's ruling regarding the 2011 tax year.

Affirmed. Having fully prevailed on appeal, the department is awarded taxable costs pursuant to MCR 7.219.


/s/ Amy Ronayne Krause
/s/ William B. Murphy
/s/ Deborah A. Servitto