# STATE OF MICHIGAN

# COURT OF APPEALS

SHAUNDALE DAVIS,

        Plaintiff-Appellant/Cross Appellee,

v

FLINT HOUSING COMMISSION and
TERRENCE CLARK,

        Defendants-Appellees/Cross
        Appellants.

UNPUBLISHED
July 18, 2017

No. 330975
Genesee Circuit Court
LC No. 12-098826-CZ

Before: Before: GLEICHER, P.J., and M. J. KELLY and SHAPIRO, JJ.

PER CURIAM.

Shaundale Davis, a property manager employed by the Flint Housing Commission, reported two violations of the law to the FHC's interim executive director, Terrence Clark. Davis brought this action under the Whistleblowers' Protection Act, MCL 15.361 *et seq.*, alleging that Clark retaliated by terminating her employment.

In answer to the first question on a special verdict form, the jury determined that Davis had not "engage[d] in protected activity under the Michigan Whistleblowers' Protection Act." Davis moved for a new trial, contending that the jury's finding contravened the great weight of the evidence. The trial court denied the motion, and Davis appeals that ruling. Defendants cross-appeal, claiming that trial court erred in the first instance by determining that Davis had created a fact question regarding the causal connection between her protected activity and her firing.

A new trial is warranted in this case. Uncontroverted evidence established that Davis engaged in protected activity under the WPA, and a genuine issue of material fact existed regarding causation. We affirm the trial court's order denying defendants' motion for summary disposition, reverse the trial court's order denying Davis's motion for a new trial, and remand for a new trial.

-1-

## I. FACTUAL AND PROCEDURAL BACKGROUND

Together with the federal Department of Housing and Urban Development, defendant FHC owns and administers subsidized housing for low-income tenants in the city of Flint. The FHC admits that it constitutes a "public body" as that term is defined in MCL 15.361(d).[1]

Davis, an experienced property manager, began working for the FHC in 2009. Her responsibilities steadily expanded during the next three years. Davis's December 2011 performance review was positive and she received a pay raise. Less than a month before her suspension, FHC's compliance director, Adena Tullar, sent an e-mail praising Davis's error-free compilation of certain tenant income data. Davis then managed nearly 400 units.

Davis claims that the FHC's attitude toward her soured after she reported two violations of the law to defendant Clark, who took over as the FHC's interim executive director in March 2012. These reports, Davis contends, constituted "protected activity," and their content precipitated her discharge.

In mid-May 2012, Davis informed Clark that an FHC maintenance employee, Neal Partridge, unlawfully entered a resident's apartment and stole prescription medication, money, and other items. The next day, Partridge called in sick. Clark admitted that he had previously worked with Partridge in the FHC's maintenance department, and that after Davis's second call concerning the incident he contacted a friend of Partridge's to inquire about Partridge's whereabouts. Clark did not report the theft to the police. He conceded that Davis was "doing the right thing" by informing him of Partridge's theft. According to Davis, Clark's demeanor and behavior changed dramatically after her report. She described that Clark acted "cold" toward her, failed to return her calls, and shunned her when she tried to speak with him in person.

Davis's second report of unlawful activity involved a tenant, Janaze Jackson. During a routine recertification audit in June 2012, Davis learned that Jackson's son had a felony conviction and outstanding felony warrants. FHC rules bar convicted felons from residing in FHC units. Davis and Jackson had a history of disputes; Jackson had publicly accused Davis of stealing money and alcoholism. Before initiating eviction proceedings, Davis consulted Clark in an email stating: "Mr. Clark you may want to review this information this is going to cause chaos." Davis perceived that Clark "was mad" at her because of her report of Jackson's noncompliance with FHC rules. She recounted at her deposition that "he got up and he walked out" and paced angrily "in front of the community room." Evidence presented at the trial substantiated that Jackson was friendly with a member of FHC's Board of Commissioners. The board would ultimately decide whether to retain Clark as the FHC's permanent executive director.

---

[1] MCL 15.361(d)(iv) defines a "public body" to include "[a]ny other body which is created by state or local authority or which is primarily funded by or through state or local authority, or any member or employee of that body."

Clark suspended Davis in July 2012, and terminated her employment a few weeks later. The reasons for these actions, according to the written documentation supplied to Davis, were "insubordination-neglect of duty" and "violation of company policies and/or safety rules." Defendants subsequently added that Davis was dishonest and violated company policies related to tenant files, which allegedly were incomplete and contained many errors. Davis filed this whistleblowers' action, alleging that she was terminated by Clark based on her reports of illegal conduct on the parts of Partridge and Jackson.

Defendants sought summary disposition. They argued that Davis was unable to establish any causal relationship between her reports in the Partridge and Jackson matters and her termination, and that she failed to rebut defendants' proffered legitimate business reasons for suspending and firing her. The trial court found that genuine issues of material fact precluded summary disposition. This Court denied defendants' application for an interlocutory assessment of that decision "for failure to persuade the Court of the need for immediate appellate review." *Davis v Flint Housing Comm*, unpublished order of the Court of Appeals, entered January 29, 2015 (Docket No. 322622).

The trial evidence focused on the subject of defendants' summary disposition motion: whether Davis's reports of illegal activity—or other reasons—precipitated her firing. During closing argument, counsel for defendants summarized:

> The plaintiff has the burden of proof. That's what I want you to keep in mind, particularly from what you heard prior. We don't have to prove anything. We are giving you the real reason for why the plaintiff's employment was terminated. But the onus is on the plaintiff to show you these three things, to show you that she was engaged in protected activity, and that she was discharged, and that there's a causal relationship, the because of.

> She hasn't done it, has she? Has she really shown a causal connection between this employee theft thing and the Janaze Jackson thing? Has she shown you there to be [sic] any relationship? She has not.

> But keep in mind when you deliberate, you're not deciding whether or not we have adequately proven that she had bad work performance. *You're only deciding if the plaintiff has proven that she was really discharged because of protected activity under MCL 15.362, the Whistleblower Protection Act? That is the sole issue in the case. . . .* [Emphasis added.]

The first question on the verdict form asked, "Did the plaintiff Shaundale Davis engage in protected activity under the Michigan Whistleblowers' Protection Act?" The jury answered "No." Pursuant to the instructions on the form, the jury did not answer any further questions. The trial court entered a judgment in favor of defendants for no cause of action. Davis filed a motion for a new trial, arguing that the jury's verdict was against the great weight of the evidence. The trial court denied the motion, reasoning as follows:

> I think it is obvious to me anyway based upon the jury's verdict that they did not believe that plaintiff had sustained her burden of proof in this case.

Now, they certainly are not privy to this argument that we're making now. But they were given the question to answer. And in their opinion, after listening to the evidence, it doesn't matter what the attorneys said, they did not believe that plaintiff had sustained her burden of proof.

I don't know how we un-ring that bell. I don't think it's fair to either side to have to retry this case. Again, I think the jury was unanimous in their decision and they decided no.

I'm not going to alter that decision. If the Court of Appeals tells me [I] have to, I will. But I'm not going to do it.

## II. GOVERNING LEGAL PRINCIPLES

A new trial may be granted whenever the "substantial rights" of a party are "materially affected" by a verdict or decision that is "against the great weight of the evidence or contrary to law." MCR 2.611(A)(1)(e). "In ruling on a motion for a new trial . . ., the court shall give a concise statement of the reasons for the ruling . . . ." MCR 2.611(F). In *Dawe v Bar-Levav & Assocs, PC (On Remand)*, 289 Mich App 380, 401; 808 NW2d 240 (2010), this Court explained that "[d]etermining whether a verdict is against the great weight of the evidence requires review of the whole body of proofs." A jury's verdict should not be set aside if competent evidence supports it. *Id*.

We review a trial court's decision whether to grant a new trial for an abuse of discretion. *Kelly v Builders Square, Inc*, 465 Mich 29, 34; 632 NW2d 912 (2001). "An abuse of discretion occurs when a court chooses an outcome that is not within the principled range of outcomes." *McManamon v Redford Charter Twp*, 273 Mich App 131, 138; 730 NW2d 757 (2006). We review de novo any questions of law ancillary to a trial court's new trial decision, *Kelly*, 465 Mich at 34, such as the meaning of a statutory provision.

## III. THE GREAT WEIGHT OF THE EVIDENCE

In denying plaintiff's motion for a new trial, the trial court did not weigh the trial evidence regarding the issue presented in the verdict form's first question: whether Davis engaged in protected activity under the WPA. Rather, the court viewed the evidence generically, concluding that the jury "did not believe that plaintiff had sustained her burden of proof in this case." Indisputably, a jury is free to accept or reject any testimony at any time. *Id*. at 39. That truism, however, does absolve the trial court of its court-rule-imposed responsibility to conduct a focused evidentiary review. A motion seeking a new trial based on a great-weight-of-the-evidence argument requires at least some articulation reflecting an analysis of the evidence introduced on both sides of a proposition. The trial court's failure to engage in any examination of the evidence regarding whether Davis engaged in protected activity constituted an abuse of its discretion. And because no evidence or reasonable inferences supported the jury's finding in this regard, we reverse and remand for a new trial.

The WPA was enacted to "provide protection to employees who report a violation or suspected violation of state, local, or federal law. . . ." *Whitman v City of Burton*, 493 Mich 303, 312; 831 NW2d 223 (2013) (quotation marks and citation omitted). "The [act] furthers this

-4-

objective by removing barriers that may interfere with employee efforts to report those violations or suspected violations, thus establishing a cause of action for an employee who has suffered an adverse employment action for reporting or being about to report a violation or suspected violation of the law." *Id*. A cause of action for violation of the WPA contains three elements:

> Under the WPA, a plaintiff may establish a prima facie case by showing that (1) the plaintiff was engaged in protected activity as defined by the act, (2) the defendant took an adverse employment action against the plaintiff, and (3) "a causal connection exists between the protected activity" and the adverse employment action. [*Debano-Griffin v Lake Co*, 493 Mich 167, 175; 828 NW2d 634 (2013) (citation omitted).]

We are concerned here with only the first element.

" 'Protected activity' under the WPA consists of (1) reporting to a public body a violation of a law, regulation, or rule; (2) being about to report such a violation to a public body; or (3) being asked by a public body to participate in an investigation." *Chandler v Dowell Schlumberger Inc*, 456 Mich 395, 399; 572 NW2d 210 (1998). Before trial, defendants conceded that FHC qualifies as a public body as that term is defined in MCL 15.361(d). Moreover, defendants presented neither evidence nor argument that Davis failed to satisfy the "public body" requirement of the WPA. In short, no evidentiary basis exists for the jury's conclusion that Davis did not report to a "public body."

During trial, both sides' witnesses acknowledged that Davis reported Partridge's criminal activity and Jackson's violation of FHC rules to Clark and other responsible persons at the FHC. Clark admitted that she had done so, and that Partridge's reported activities were both a crime and a violation of FHC rules. Clark also agreed that Davis was "doing the right thing" when she informed him of the crime. FHC's human resources director, too, admitted to having received Davis's report of Partridge's illegal conduct.

Davis reported the illegal presence of Jackson's son to Clark and Tullar; both admitted as much at trial. Tullar agreed with Davis's assessment that eviction was in order. Clark likewise acknowledged that Davis "was doing her job" when she reported the rule violation to him. Defendants presented no evidence contradicting the accuracy of Davis's two reports, and raised no argument that the reports fell outside the definition of "protected activity." The great weight of the evidence—indeed, the *only* evidence—established that Davis's reports constituted protected activity under the WPA.

Defendants rest their appellate argument on waiver and preservation principles. They first argue that because Davis's counsel stipulated to the special verdict form, Davis has waived any error. This argument is unaccompanied by any citations to governing law. It also mischaracterizes the issue presented, which has nothing to do with the verdict form itself. Davis's failure to object to the jury verdict form does not foreclose her from challenging the evidentiary support for the verdict.

Defendants next contend that Davis should have moved for a directed verdict at trial, and that her failure to do so extinguishes her great weight claim. Defendants again fail to provide

competent legal support for their argument. They cite *Napier v Jacobs*, 429 Mich 222, 228; 414 NW2d 862 (1987), which involves a sufficiency of the evidence challenge rather than one based on great weight.

Defendants also assert that Davis should have brought her great weight claim while the jury was still seated, so that the jurors could have been instructed to answer yes to question one and continue deliberating. Again, defendants fail to provide legal authority supporting their argument. Moreover, MCR 2.611(A)(1)(e) expressly allows a party to move for a new trial on the ground that a verdict or decision is against the great weight of the evidence, and MCR 2.611(B) allows a motion for a new trial to be filed within 21 days after entry of the judgment.

Defendants urge that the jury could have found that Davis's report about Jackson's son was not protected activity because (1) Jackson's son may have only had warrants out for his arrest rather than a prior conviction, or (2) only certain types of criminal convictions will establish a violation of FHC rules, no evidence suggested that Jackson's son had been convicted of one of them. But the WPA protects whistleblowers from retaliation based on reports of a "suspected violation of a law or regulation or rule" as well as from an actual violation. MCL 15.362. Clark acknowledged that Davis appropriately revealed the rules' violations to him. We find defendants' argument unpersuasive.[2]

In sum, because the great weight of the trial evidence demonstrated that Davis engaged in protected activity under the WPA, the trial court abused its discretion in denying her motion for a new trial on this ground. We reverse that order and remand for a new trial.

## IV. THE CROSS APPEAL

We turn to defendants' cross appeal, which is premised on Davis's alleged failures to present evidence of causation and to rebut evidence demonstrating legitimate reasons for her discharge. Defendants also argue that Davis failed to show that her reporting of wrongdoing was made to a public body under the WPA. We reject all of these arguments.

We review de novo a trial court's decision on a motion for summary disposition brought under MCR 2.116(C)(10). *Debano-Griffin*, 493 Mich at 175. "[W]e must ask whether a genuine issue of material fact exists when, viewing the evidence in a light most favorable to the nonmoving party, the record which might be developed would leave open an issue upon which reasonable minds might differ." *Id.* (quotation marks and citation omitted). Our review requires us to consider the pleadings, affidavits, depositions, admissions, and other documentary evidence and construe them in light most favorable to the nonmoving party. *Corley v Detroit Bd of Ed*, 470 Mich 274, 278; 681 NW2d 342 (2004).

---

[2] Defendants seem to suggest that the jury could have found that Jackson's son's subsequent departure from her premises eliminated any illegality, and that Davis had not been the only person to report Partridge's theft. But such findings would not negate or refute that Davis reported a violation of a law to a public body.

A. CAUSATION

Because Davis relied on circumstantial evidence to overcome defendants' motion for summary disposition, "the framework set forth in *McDonnell Douglas Corp v Green*, 411 US 792, 93 S Ct 1817, 36 L Ed 2d 668 (1973), is applicable." *Debano-Griffin*, 493 Mich at 171.

> Absent direct evidence of retaliation, a plaintiff must rely on indirect evidence of his or her employer's unlawful motivations to show that a causal link exists between the whistleblowing act and the employer's adverse employment action. See *Hazle* [*v Ford Motor Co*, 464 Mich 456, 462-463; 628 NW2d 515 (2001)]. A plaintiff may " 'present a rebuttable prima facie case on the basis of proofs from which a factfinder could infer that the plaintiff was the victim of unlawful [retaliation].' " *Id.* at 462, quoting *DeBrow v Century 21 Great Lakes, Inc (After Remand)*, 463 Mich 534, 537-538; 620 NW2d 836 (2001). Once a plaintiff establishes a prima facie case, "a presumption of [retaliation] arises" because an employer's adverse action is "more likely than not based on the consideration of impermissible factors"—for example, here, plaintiff's protected activity under the WPA—if the employer cannot otherwise justify the adverse employment action. *Hazle*, 464 Mich at 463 (citations and quotation marks omitted).
>
> The employer, however, may be entitled to summary disposition if it offers a legitimate reason for its action and the plaintiff fails to show that a reasonable fact-finder could still conclude that the plaintiff's protected activity was a "motivating factor" for the employer's adverse action. *Id.* at 464-465. "[A] plaintiff must not merely raise a triable issue that the employer's proffered reason was pretextual, but that it was a pretext for [unlawful retaliation]." *Id.* at 465-466 (citations and quotation marks omitted). [*Debano-Griffin*, 493 Mich at 176.]

To prove causation, a plaintiff is required to present evidence of more than a mere coincidence in timing between the protected activity and the adverse employment action. *Garg v Macomb Co Community Mental Health Servs*, 472 Mich 263, 286; 696 NW2d 646 (2005), amended 473 Mich 1205 (2005). In *Rymal v Baergen*, 262 Mich App 274, 303; 686 NW2d 241 (2004), this Court explained that

> [a] causal connection can be established through circumstantial evidence, such as close temporal proximity between the protected activity and adverse actions, as long as the evidence would enable a reasonable fact-finder to infer that an action had a discriminatory or retaliatory basis.

Davis's suspension and discharge occurred shortly after she reported unlawful activity. She also presented evidence that Clark acted differently toward her after she reported the Partridge theft. Defendants contend that this evidence was insufficient to establish a causal connection between her actions and her suspension and termination.

Davis's deposition testimony described actively hostile and unprofessional conduct by Clark after she reported Partridge's theft; Clark acted "cold" and made her feel uncomfortable

when they interacted, failed to return her calls, and shunned her when she tried to speak with him in person. Davis recounted that when she went to Clark's office to speak with him, Clark turned his back and ignored her. During a tour of one of the housing units, Clark walked out on her. Davis also provided evidence of Clark's motive for his hostility. Partridge was Clark's friend, Davis explained, and Jackson was friendly with a board member who would have input into whether Clark was hired as the permanent executive director of FHC. In addition, unlike the supervisors whose conduct was described in *West v Gen Motors Corp*, 469 Mich 177, 185; 665 NW2d 468 (2003), Clark was responsible for firing Davis. The trial court did not err in finding that the evidence established a genuine issue of material fact regarding whether Davis's suspension and discharge were causally related to her reports in the Partridge and Jackson matters.

Defendants also argue that Davis did not show that she was a "type 2" whistleblower, i.e., a person who was requested by a public body to participate in an investigation held by that public body or in a court action. *Henry v Detroit*, 234 Mich App 405, 410; 594 NW2d 107 (1999). This argument is irrelevant; Davis did not rely on that theory of recovery.

## B. PRETEXT

Davis's evidence also supported that defendants' stated reasons for her discharge were pretextual.

> A plaintiff can establish that a defendants' articulated legitimate . . . reasons are pretexts (1) by showing the reasons had no basis in fact, (2) if they have a basis in fact, by showing that they were not the actual factors motivating the decision, or (3) if they were factors, by showing that they were jointly insufficient to justify the decision. [*Feick v Monroe Co*, 229 Mich App 335, 343; 582 NW2d 207 (1998).]

In the summary disposition context, this Court has observed:

> The granting of a motion for summary disposition is especially suspect where motive and intent are at issue or where a witness or deponent's credibility is crucial. Accordingly, where the truth of a material factual assertion of a moving party depends upon a deponent's credibility, there exists a genuine issue for the trier of fact and a motion for summary disposition should not be granted. [*Vanguard Ins Co v Bolt*, 204 Mich App 271, 276; 514 NW2d 525 (1994) (citations omitted).]

The trial court did not err in finding that Davis established a genuine issue of material fact with regard to whether Clark's proffered reasons for her suspension and discharge were actually pretexts for discharging her. In answer to Davis's interrogatory No. 45, defendants asserted that Davis was fired in part because she "exhibited dishonesty in violation of rules of conduct." In his deposition, Clark proffered instances of alleged dishonesty in connection with Davis's reports of computer problems to support his termination decision. At the motion hearing, however, defendants' counsel walked-back the "dishonesty" grounds, explaining that Davis's purported dishonesty had not motivated Clark's actions. The Employee Disciplinary

Forms prepared by Clark indicate that Davis was suspended and discharged for insubordination and violation of company policies in connection with her handling of tenant files, which allegedly were incomplete and contained many errors. Clark claimed in his deposition that he did not "check the box" for "dishonesty" on the forms because the other grounds "[were] enough." These contrasting and ever-shifting reasons for Davis's discharge raise an inference that defendants' proffered reasons were not the actual factors motivating those decisions.

In addition, Davis testified that Clark's attitude and behavior changed after she reported the Partridge theft and Jackson's son's criminal activity. She offered credible motivations for Clark's displeasure; Partridge was Clark's friend and Jackson had influence with a board member. In addition to supporting a finding of causation, evidence of Clark's hostility substantiates that the reasons given for Davis's dismissal were pretextual. "[E]vidence sufficient to discredit a defendants' proffered nondiscriminatory reasons for its actions, *taken together with the plaintiff's prima facie case*, may be sufficient to support[,] but not require[,] a finding of discrimination." *Town v Mich Bell Tel Co*, 455 Mich 688, 698; 568 NW2d 64 (1997) (quotation marks and citation omitted, emphasis added).

To survive summary disposition, Davis was not required to present evidence that her protected activity was the *only* factor motivating her termination. The pivotal inquiry at this stage is "whether consideration of a protected characteristic was a motivating factor, namely, whether it made a difference in the contested employment decision." *Hazle*, 464 Mich at 466; see also *Debano-Griffin*, 493 Mich at 176. Davis introduced evidence of causation and of Clark's possible motives for retaliating against her based on her protected activity. The timing of the suspension (11 days after Davis's receipt of the e-mail congratulating her for her work) as well as the prior positive reviews, lend further support to a finding of pretext. Accordingly, the trial court did not err in finding that genuine issues of material fact precluded summary disposition in this regard.

## C. PUBLIC BODY

Defendants also argue that they were entitled to summary disposition because HUD, a federal agency, is not a "public body" under MCL 15.362(d). See *Lewandowski v Nuclear Mgt Co, LLC*, 272 Mich App 120, 123; 724 NW2d 718 (2006). Davis's reports were made to supervisory personnel at defendant FHC, and defense counsel conceded that FHC is a public body for purposes of the WPA. Accordingly, defendants waived this issue for appeal. *Grant v AAA Michigan/Wisconsin, Inc (On Remand)*, 272 Mich App 142, 148; 724 NW2d 498 (2006).

We affirm in part, reverse in part, and remand for a new trial. We do not retain jurisdiction.

/s/ Elizabeth L. Gleicher
/s/ Michael J. Kelly
/s/ Douglas B. Shapiro